**TRAVELERS FIRE INS. CO. v. TAYLOR et ux.**

**No. 12331.**

United States Court of Appeals Fifth Circuit.

Dec. 17, 1948.

Pinkney Grissom, of Dallas, Tex., for appellant.

Neal C. DeShazo, of Dallas, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The appellees brought suit in the State court against the appellant, insurer, asking recovery under the extended-coverage provision of a Texas Standard Fire Insurance

policy. The case was removed to the court below, where it was tried to a jury. Two sums were asked in recovery, one growing out of damages alleged to have been sustained in a hailstorm on April 9, 1946, and the other for damages alleged to have occurred during a storm on May 29, 1946. The jury brought in a verdict for plaintiffs which was less than the total amount initially asked but more than the sum claimed to have arisen from the damages caused by the April 9 hailstorm. From the judgment entered upon the verdict, defendant prosecuted this appeal.

The plaintiffs, husband and wife, owned a two-story brick building, located on Federal Street in Dallas, Texas. The roof of the building was a composition or "built-up" flat roof, made of asphalt and felt, with a surface coating of gravel.* On April 9, 1946, the roof was damaged by hailstones. According to testimony there were spots around it where the hail had cut through the upper felt layer and caused abrasions to the second layer. There was also testimony by one witness that a leak was later discovered. A roofing concern was called in, and, after an examination, it made an estimate of the cost of repairing the damage in the amount of $2,520.15. On May 29, 1946, before any repair work had been done on the roof and even before the estimate was made, but after the examination by the roofers, there was another storm. During the second storm, a portion of the roof fell in. Debris fell all the way to the ground floor, carrying the greater part of the second floor along with it.

The policy provision upon which plaintiffs relied reads in part as follows:

"Conditions applicable only to windstorm, hurricane, and hail: This company shall not be liable for loss * * *

"(b) By snowstorm, tidal wave, high water, or overflow whether driven by wind or not; nor unless caused directly by a hurricane, for any loss caused by rain, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall then be liable only for loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings."

Plaintiffs alleged that this extended-coverage clause made the insurer liable for both losses. Vigorously disagreeing with such an interpretation, defendant maintained its only liability was for the loss occurring on April 9, and then only in the amount which represented the depreciated value of the damaged roof, rather than the cost of its repair. At the close of the testimony, the defendant moved for an instructed verdict, and the motion was overruled. It asked the court, and the court then refused, to instruct the jury not to consider any loss sustained through the collapse of the roof, including the collapse itself, and, further, that only damage directly resulting from the April 9 hailstorm could be considered. The amount of the verdict would indicate that the jury included damages from both storms.

Since the plaintiffs sued to recover under a policy insuring losses from certain named hazards, it was their duty to show by substantial evidence that each loss sustained was linked in causal chain to a hazard insured against. In the absence of such a showing, there is no question for the jury to decide. The rule to be followed is set out in Pennsylvania Pulverizing Co. v. Butler, 3 Cir., 61 F.2d 311, at page 314, as follows:

"Whether on this evidence the court erred in submitting the case to the jury is a question to be determined not by weighing the evidence for the plaintiff against the evidence for the defendant, since that is not the function of an appellate court, but by subjecting the evidence for the plaintiff alone to the test of several well established rules of law relating to the quality of proof in general and to the character of proof required in this particular kind of a

---

* Construction of a roof such as the one on appellee's building begins at deck level and consists of applying layers of felt interspersed with asphalt or pitch to the desired thickness. The custom when renewing a "built-up" roof is to remove the gravel surface and add layers of asphalt and felt. This roof was so processed in 1935 and 1936.

negligence case. The first, which is negative, is that in federal courts the scintilla rule no longer exists; the second, that evidence to be controlling should be substantial enough, if submitted, to sustain an affirmative finding by the jury, Evans v. Ely, 3 Cir., 13 F.2d 62, 64; and to be validly submitted it must be 'something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of "proof." ' Minahan v. Grand Trunk [Western] R. Co., 6 Cir., 138 F. 37, 46."

█ For a statement of Texas law, see Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, at page 1063:

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though. there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."

See Wigmore on Evidence, 3d Ed., Vol. 9, § 2494.

█ A careful review of all the evidence compels the conclusion that there was no showing of a relation between the agency causing collapse of the roof and those hazards insured against as would justify the submission of the damages arising from the collapse to the jury.

For this second alleged loss, that of May 29, to be embraced by the policy provisions, the damages would have to be "caused directly by hurricane" or "caused immediately by rain entering the building" where "wind or hail shall first make an opening in the walls or roof." The testimony furnished no evidence that the loss was caused in the foregoing manner or manners, and it cannot be complacently assumed that the roof's collapse, with the resultant interior damage, extended from or was linked directly to the hailstorm early in April. The hailstones on that occasion may have caused perforations in the top layer of roofing felt and cut into the second layer, but nothing either specific or authoritative was introduced to show that the collapse resulted from such damage. Mere allegations and proof of two storms and the result of each to the structure were not sufficient support of plaintiffs' burden of proof as would warrant submission of a question of relation between hail damage of April 9 and collapse on May 29. Thus, divorcing the April storm, we must see whether the May 29 collapse was related to hazards insured against arising during the storm of that date. It may be stated categorically that there was no showing of a hurricane, thus eliminating that particular hazard and leaving hail and wind. In some manner, an opening was made in the roof. It is readily conceded that water entered through the opening and caused damage to the interior. Nevertheless, such water damage does not bring the loss within the terms of the policy sued on unless wind and hail immediately prior to the water's entry had caused the opening in the roof. The cause of the collapse was not shown, nor can it be inferred from any of the evidence. The most salient observation was elicited in cross-examination of the plaintiffs' witness, Babcock, who gave an affirmative answer when asked if it were not true that the cause of the collapse was purely speculative. In sum, the plaintiffs' evidence was tenuous and not of such relevance and quality as validly relates the agency or element causing the collapse of the roof to hazards insured against. In

such circumstances, there was no question on this score for the jury.

The trial judge overruled defendant's motion for an instructed verdict for failure to file proof of loss, stating that defendant's attorney advised that the defendant made no point on that and stood ready to pay whatever was due. We are unable to find this statement by defendant's attorney anywhere in the record, but the statements in testimony by Mr. Hempel, defendant's claims manager, that the company stood ready to pay the damages from hail and the defendant's attorney's statement of insurer's position at the trial's close, together with the admission in the answer filed by defendant that the company stood ready to pay for damage insured against, indicate that such a statement may have been made.

Because of the failure of the plaintiffs to show any connection between the hazards insured against and the collapse, the damages sustained to the roof on May 29 should have been eliminated from the consideration of the jury.

The judgment is reversed, and the cause is remanded for a general new trial.

Reversed and remanded.